Paula Jean JOHNSTON and Kerrie Jean Johnston, an infant, by Paula Jean Johnston, her guardian ad litem, Plaintiffs-Appellants,

v.

PIERCE PACKING COMPANY and Thomas C. White, Defendants-Appellees.

No. 74–2184.

United States Court of Appeals, Ninth Circuit.

March 9, 1977.

Lloyd J. Webb, Roger S. Burdick, Webb, Pike, Burton & Carlson, Twin Falls, Idaho, Paula Jean Johnston, D. Brent Martens, Buhl, Idaho, for plaintiffs-appellants.

Stanley E. Gardner, Berkley, Vaughns, Rhodes & Sherrod, Oakland, Cal., for defendants-appellees.

Before KOELSCH, HUFSTEDLER and CHOY, Circuit Judges.

CHOY, Circuit Judge:

Plaintiffs appeal in this diversity action from an adverse judgment entered upon a jury verdict. They assign as error the failure of the trial court to give two jury instructions requested by them. We affirm.

Appellants Paula and Kerrie Johnston, the widow and child of Ronald Johnston, brought this action under the Idaho Wrongful Death Statute, Idaho Code § 5–311, against Pierce Packing Company and its driver, Thomas C. White. They claimed damages for Ronald Johnston's death which resulted from an accident involving a truck driven by White for Pierce Packing. The jury returned a special verdict, finding that Johnston and White had each been fifty percent negligent in causing the collision. Under Idaho's comparative negligence statute, Idaho Code § 6–801, appellants recovered nothing.

Johnston died when the truck and trailer he was driving crashed into another rig being operated by White at about 3:45 a. m. on the morning of October 8, 1972. Both vehicles were travelling south in the outside lane of a four-lane stretch of Interstate 15 near Pocatello, Idaho. White had stopped on the emergency strip adjoining the highway and had just reentered the travel lane and attained a speed of from 15 to 32 miles per hour when the Johnston truck slammed flush into the rear end of his vehicle. Upon impact, White's truck skidded 165 feet forward, continuing in the outside travel lane. Skid marks of 65 feet were found approaching the point of impact.

Johnston's truck was capable of a top speed of 60 miles per hour. The speed limit at the scene of the accident was 65 miles per hour. The night was clear. No other

vehicles were near. The only eyewitness to the impact was William J. Marlar who was approaching the accident scene from the south in a northbound lane of the highway. Marlar testified that he did not actually see Johnston's vehicle prior to the collision as he had his attention focused on the White truck. There was conflicting evidence as to whether White was driving at the time with the rear lights of his truck illuminated.

On appeal, Johnston's survivors advance two grounds for reversal, both of which involve jury instructions that appellants requested but were refused.

### Presumption of Due Care Instruction

■ Under Idaho law,[1] in the absence of sufficient evidence concerning the pre-accident actions of a decedent, a presumption arises that he was exercising due care for his own safety. The jury, however, is not informed of this presumption if the defendant is able to offer sufficient evidence to dispel the need for it. Appellants requested such an instruction. The trial court denied their request, finding that there was "some" evidence as to the actions of decedent leading up to the collision. Appellants made a timely objection to the refusal of the presumption of due care instruction.

Here, appellants argue that the trial judge misconstrued the Idaho law on the type of evidence which is sufficient to dispel the need for the instruction. More specifically, they maintain that Idaho cases require clear and convincing evidence of the decedent's activities through the testimony of disinterested eyewitnesses, circumstantial evidence alone being insufficient. We must determine, first, whether in fact the trial judge correctly read the Idaho case law on the giving of the due care presumption and, then, whether he properly applied those rules to the facts at hand.

■ At the outset, we note that Idaho law on this issue does not seem to follow an entirely clear-cut path. Certain generalizations are, however, available to guide us. First, the decision whether to give "an instruction on the presumption of due care on the part of decedent depends on the factual pattern of each individual case." *Domingo v. Phillips,* 87 Idaho 55, 390 P.2d 297, 301 (1964). Second, our review of the extensive body of Idaho case law on this subject convinces us that rarely is the trial court's decision to give or withhold the instruction overturned on appeal.[2] In affirming a trial court's denial of the instruction, the Supreme Court of Idaho in *Lallatin v. Terry,* 81 Idaho 238, 340 P.2d 112, 118 (1959), cautioned: "We do not hold that an instruction on the presumption would have been erroneous in this case. We hold only that the refusal of the instruction under the circumstances presented was not error." There-

---

1. Rules governing presumptions and burdens of proof are generally regarded as substantive for purposes of *Erie R. R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *See Equitable Life Assurance Society v. MacDonald,* 96 F.2d 437, 438–39 (9th Cir.), cert. denied, 305 U.S. 624, 59 S.Ct. 86, 83 L.Ed. 399 (1938); *Worthington Corp. v. Lease Management, Inc.,* 352 F.2d 24, 29 (6th Cir. 1965), cert. denied, 383 U.S. 937, 86 S.Ct. 1068, 15 L.Ed.2d 854 (1966); 5 J. Moore, Federal Practice ¶ 43.08 (2d ed. 1975). Neither party contests the applicability of Idaho law.

2. In the following cases, the denial of the instruction was upheld: *Dopp v. U. P. R. R.,* 95 Idaho 702, 518 P.2d. 964 (1974); *Domingo v. Phillips,* 87 Idaho 55, 390 P.2d 297 (1964); *Dewey v. Keller,* 86 Idaho 506, 388 P.2d 988 (1964); *Drury v. Palmer,* 84 Idaho 558, 375 P.2d 125 (1962); *Mundy v. Johnson,* 84 Idaho 438, 373 P.2d 755 (1962); *Lallatin v. Terry,* 81

Idaho 238, 340 P.2d 112 (1959); *Graham v. Milsap,* 77 Idaho 179, 290 P.2d 744 (1955); *Neff v. Hysen,* 72 Idaho 470, 244 P.2d 146 (1952); *Brown v. Graham,* 62 Idaho 388, 112 P.2d 485 (1941). *See also Bradbury v. Voge,* 93 Idaho 360, 461 P.2d 255 (1969).

In these cases, the giving of the instruction was affirmed on appeal: *Jorstad v. City of Lewiston,* 93 Idaho 122, 456 P.2d 766 (1969); *Van v. U. P. R. R.,* 83 Idaho 539, 366 P.2d 837 (1961); *Dep't of Finance v. U. P. R. R.,* 61 Idaho 484, 104 P.2d 1110 (1940); *Geist v. Moore,* 58 Idaho 149, 70 P.2d 403 (1937). *See also Madron v. McCoy,* 63 Idaho 703, 126 P.2d 566 (1942).

In fact, no Idaho case which reverses the lower court's judgment on this basis has been brought to our attention. *But see Koch v. Elkins,* 71 Idaho 50, 225 P.2d 457 (1950); *Packard v. O'Neil,* 45 Idaho 427, 262 P. 881 (1927).

fore, it seems clear that the trial court is clothed with a broad discretion to grant or withhold the requested instruction as the "factual pattern of each individual case" may dictate. We limit our review accordingly.[3]

■ Appellants argue that only disinterested eyewitness testimony of the activities of the decedent leading up to the accident is sufficient to dispel the need for the presumption instruction. They maintain that Marlar admitted to noticing the Johnston truck only at the point of impact, and that whatever light White can shed on the circumstances of the accident must be discounted due to his personal involvement as a defendant. We are not convinced, however, that Idaho law demands disinterested eyewitness testimony to render the presumption unnecessary.

In *Domingo v. Phillips, supra,* the unimpeached testimony of the driver of the wagon which killed the decedent was held to be sufficient to overcome the presumption. He, of course, cannot be said to have been a "disinterested" party. Moreover, to say that "it is not proper to give an instruction on the presumption on [*sic*] due care on the part of a plaintiff where there are available witnesses to the facts and circumstances leading up to the accident and the actions of the injured party immediately prior thereto," *Dopp v. U. P. R. R.,* 95 Idaho 702, 518 P.2d 964, 966-67 (1974), is not necessarily to imply that eyewitness testimony is needed before the denial of the instruction is proper.

We have found no Idaho case which holds that circumstantial evidence is not sufficient to fill the evidentiary void. Rather, cases seem clearly to indicate that the contrary is the law in Idaho. In *Mundy v. Johnson,* 84 Idaho 438, 373 P.2d 755 (1962), the defendant driver was the only witness to the accident, and she observed the deceased child only when it darted out in front of her vehicle from behind a parked car. Like Marlar, the defendant there observed only the impact; like White, she clearly was not disinterested. It was only through reconstruction of the child's course that sufficient evidence was offered to preclude the necessity for the instruction. Such evidence can only be said to be circumstantial in relation to the causes of the accident. In upholding the denial of the presumption of due care instruction, the Supreme Court of Idaho said:

> In this case there was evidence as to the activities of the deceased child from the time she left the Bible school to the time she ran out in front of the car. Nothing is left to guess or speculation as to how the accident happened. In such circumstances we have held that an instruction on the presumption of due care is unnecessary.

373 P.2d at 762. To the same effect is *Dewey v. Keller,* 86 Idaho 506, 388 P.2d 988 (1964), in which the court held that "[w]here the details of an accident are available through eye witnesses *or other external evidence,* the purpose of the presumption is served and the necessity for such instruction is removed." 388 P.2d at 995 (emphasis added).

Finally, we note that there seems to be some reluctance on the part of Idaho courts to granting the instruction. In *Graham v. Milsap,* 77 Idaho 179, 290 P.2d 744, 749 (1955), we find this general caveat: "Instructions on presumptions of due care on the part of a decedent are not favored, and the tendency is to refrain from giving them, especially where there are eye witnesses." More directly on point, the Supreme Court of Idaho has said: "Serious doubt arises as to the propriety of giving an instruction on the presumption of due care in an action such as this where contributory negligence has been pleaded and relied upon as an affirmative defense." *Van v. U. P. R. R.,* 83 Idaho 539, 366 P.2d 837, 844 (1961).

---

**3.** In addition to the deference which Idaho law pays to the determination of the trial court on this issue, it is well to point out that United States courts of appeals generally regard highly the interpretation of state law rendered by district courts. *Reimche v. First Nat'l Bank,* 512 F.2d 187, 190-91 (9th Cir. 1975) (Koelsch, J., dissenting); *Hurst v. Dare To Be Great, Inc.,* 474 F.2d 483, 484 (9th Cir. 1973).

Thus, we hold that appellants' contention that Idaho law requires that there be clear and convincing, eyewitness testimony by a disinterested party to dispel the need for the instruction is unfounded. We now turn to a discussion of whether the district judge abused his discretion in finding that there was "some" evidence as to the activities of the decedent leading up to the accident and in refusing the requested instruction.

■ It is clear that the principal inference which the defendants attempted to bring home to the court and the jury was that the decedent, Johnston, was asleep at the wheel just before the accident occurred and was, therefore, unable to take reasonable evasive action to avoid the collision. Driving log books were introduced to show that Johnston may have had little sleep in the hours and days preceding the accident. Testimony was offered to prove that the night was clear and road conditions ideal. While it is true that there was substantial conflict as to whether the White truck had its rear lights in operation at the time it pulled back onto the highway, Idaho law requires that the driver of a vehicle ordinarily must be capable of stopping his vehicle within the radius of his own headlights. *Hawkins v. Chandler*, 88 Idaho 20, 396 P.2d 123, 127 (1964). Although this standard is not an absolute one, the factfinder is permitted to take the rule into consideration in the determination of negligence. In this regard, it seems highly relevant that skid marks found on the highway measured only 65 feet in length.

Most damaging, perhaps, is the evidence which seems to indicate that Johnston did not attempt to swerve in order to avoid the obstacle in his lane. The front of his vehicle hit flush with the rear of White's truck. The high speed lane was clear and unobstructed at the time, as was the emergency lane to the outside.

■ Given the above, the district court could properly have concluded that the evidence that Johnston may indeed have been inattentive at the time of the accident warranted dispensing with the instruction in this case. We cannot say that the district court abused its discretion in denying the presumption of due care instruction.

### Burden of Proof Instruction

Next, appellants argue that the jury, nevertheless, should still have been instructed that, under Idaho comparative negligence law, it was the defendants who bore the burden of proving that the decedent was negligent. Idaho R.Civ.P. 8(c). It is important, however, to pause here in order to distinguish carefully between the presumption and burden contentions. *See generally* Ashford & Risinger, *Presumptions, Assumptions, and Due Process in Criminal Cases: A Theoretical Overview*, 79 Yale L.J. 165, 171–74 (1969); Morgan, *Evidence, Presumptions, and Burdens of Proof*, 23 Oregon L.R. 269 (1944).

■ Idaho apparently adheres to the view that the due care presumption serves as a substitute for evidence. As long as the presumption is appropriately a part of the case, it must go to the jury and be given weight as evidence. *See Haman v. Prudential Ins. Co.*, 91 Idaho 19, 415 P.2d 305, 310–12 (1966); Idaho Jury Instruction No. 213. However, even when the need for the presumption is dispelled through the introduction of sufficient testimonial and circumstantial evidence, the burden of proving that the plaintiff was negligent remains with the defendant. In other words, the trial judge determines whether the defendant has offered sufficient evidence to block the jury's being informed of the presumption of due care. But, even if the plaintiff loses the aid of the presumption, he still deserves a jury instruction explaining that the burden of persuasion on the issue of the plaintiff's negligence rests with the defendant.[4] Idaho case law seems at times to

---

4. However, this may not be true where defendants have offered enough convincing evidence not only to dispel the need for the due care presumption but also to overcome their burden of persuasion. In such a case, a directed verdict under Fed.R.Civ.P. 50(a) for the defendants may be appropriate and would, of course, obviate the need for any jury instructions.

confuse the due care presumption and burden issues, apparently viewing the two as interchangeable. *See, e. g., Van,* 366 P.2d at 844–45; *Koch v. Elkins,* 71 Idaho 50, 225 P.2d 457, 461 (1950).

We conclude, however, that appellants here were clearly entitled to an instruction explaining that the burden of persuasion on the issue of decedent's negligence rested with defendants, regardless of the finding that a presumption of due care instruction was inappropriate. At oral argument, appellants contended that they were denied that burden instruction.

■ Our examination of the record, however, convinces us that appellants have no cause for complaint on this score. Plaintiffs' Requested Instruction No. 6, in pertinent part, reads: "Any party who asserts that certain facts existed or exist has the burden of proving those facts." The actual

instructions used by the trial court to explain the allocation of burdens were Nos. 13 & 14. Instruction No. 13 explained that "[t]he burden is on the plaintiff in a civil action, such as this, to prove every essential element of his claim . . .." Instruction No. 14 began: "Although the burden is on the party, [*sic*] who asserts the affirmative of an issue . . .." While it would perhaps have been better for the trial judge to have reserved a separate instruction for describing with particularity the burdens which each side had to bear, it is clear that Plaintiffs' Proposed Instruction No. 6 itself failed to request that specificity.

■ Moreover, even if the burden instructions could be said to be misleading when viewed as a whole, *see United States v. Trejo,* 501 F.2d 138, 140 (9th Cir. 1974), appellants waived their right to raise that instructional error here, for they failed to object in a timely manner to the final bur-

Judge Hufstedler in dissent appears to confuse the quantum of evidence which, under Idaho law, the defendant must offer to dispel the need for a jury instruction on the presumption of decedent's non-negligence with that required to convince a judge to take the issue of decedent's contributory negligence away from the jury entirely and find that decedent was in fact negligent. In doing so, she may have misread the import of three Idaho cases. *Bradbury v. Voge,* 93 Idaho 360, 461 P.2d 255, 257–58 (1969), held that evidence which "conclusively established" that decedent was negligent justified the granting of *summary judgment* in favor of the defendant on the issue of decedent's contributory negligence—not merely the denial of a jury instruction that decedent was presumed to have exercised due care for his own safety. Similarly, in *Ineas v. U.P.R.R.,* 72 Idaho 390, 405, 241 P.2d 1178, 1188 (1952), the Idaho Supreme Court said that "positive evidence which conclusively contradicts the presumption of due care . . . *not only overcomes the presumption, but prevents recovery* [under the former contributory negligence law] by the deceased's representatives." (Emphasis added.)

Moreover, *Dep't of Finance v. U.P.R.R.,* 61 Idaho 484, 104 P.2d 1110, 1112, 1113 (1940), held only that, where "reasonable minds might draw different conclusions [as to decedent's negligence], it is *proper* to instruct the jury as to the presumption." (Emphasis added.) That the *Dep't of Finance* rule for such situations is

merely a permissive one can be confirmed by tracing its origins back through *Geist v. Moore,* 58 Idaho 149, 70 P.2d 403, 410 (1937) (semble), to *Packard v. O'Neil,* 45 Idaho 427, 262 P. 881, 886 (1927), and by a reading of the later cases—including those on which we based our conclusion that the trial court is clothed with discretion in this matter—such as *Lallatin v. Terry,* 81 Idaho 238, 340 P.2d 112, 118 (1959).

Thus, according to our analysis of Idaho law, the trial court, in ruling whether the instruction should be given, is not deciding whether "(the presumption of due care) must be disbelieved as a matter of law," as Judge Hufstedler suggests. The trial court does not weigh the presumption against available evidence. As a discretionary matter it determines whether, in light of the evidence presented, there exists an evidentiary void to be filled by the presumption and whether, given that the defendant must in any event prove decedent's negligence by a preponderance, the plaintiffs deserve the additional advantage of the due care presumption. *See Van v. U.P.R.R.,* 83 Idaho 539, 366 P.2d 837, 844–45 (1961).

Finally, Judge Hufstedler attempts to make a distinction between when the presumption does not arise and when it has arisen but is dispelled. But, neither Idaho case law nor logic supports such a distinction, and the attempt serves only to obscure the practical function which the Idaho due care presumption is designed to serve.

den instructions proposed by the trial court. Fed.R.Civ.P. 51.[5]

Judgment affirmed.

HUFSTEDLER, Circuit Judge, dissenting:

The failure of the district court to instruct the jury on the presumption of due care and the absence of an intelligible instruction upon the defendant's burden of proving the decedent's negligence require reversal and a new trial. The majority opinion assumes that Idaho gives a trial judge broad discretion to decide whether to instruct a jury upon the presumption of due care and that Idaho does not disturb that exercise of discretion if any evidence contradicting the presumption has been presented. The majority's reasoning is plausible, but it is not the law of Idaho.

Neither the decision that the presumption has arisen, nor the decision that the presumption, once it has arisen, has been dispelled is a matter of discretion.[1] Idaho cases on the propriety of invoking the presumption are not a model of clarity. Indeed they indicate a confusion on the part of the Idaho courts as well as the majority opinion between (1) situations in which no presumption of due care arises; and (2) those in which the presumption has already arisen and the question is whether the presumption has been dispelled. Because these two situations rely on different theoretical underpinnings, their separation is crucial to the analysis of the present case.

The purpose of the presumption of due care is to ease the burden of proving non-negligence when the party who seeks to

prove nonnegligence cannot obtain proof of that fact because he is dead, is too young to testify, is unable to remember due to injury, has no other witnesses to the details of the accident, or has no convincing evidence of those details from other sources. (*See State of Maryland v. Baltimore Transit Co.* (4th Cir. 1964) 329 F.2d 738, 741 (". . . The presumption . . . may be invoked only where the injured person is unavailable because of the injuries suffered or because of death. Such incapacity is the just reason for the presumption[.]"); *Murphy v. Atchison, Topeka & Santa Fe R.R.* (1958) 162 Cal.App.2d 818, 824, 329 P.2d 75, 78 (". . . The only possible justification for the employment of the presumption against the party carrying the burden of proof is to provide a balancing factor to compensate for a handicap resulting from the destruction of a vital source of evidence.").) In this way, the presumption acts as a substitute for live testimony in the absence of other evidence of the events leading up to an accident.

When these circumstances do not exist, the reason for creating the presumption disappears, and the presumption does not arise. (*See Dewey v. Keller* (1964) 86 Idaho 506, 388 P.2d 988, 995 (The presumption does not arise when "the details of an accident are available through eye witnesses or other external evidence."). *Accord: Dopp v. Union Pac. R.R. Co.* (1974) 95 Idaho 702, 518 P.2d 964; *Mundy v. Johnson* (1962) 84 Idaho 438, 373 P.2d 755.) Accordingly, instructions on such a nonexistent presumption would be unnecessary, and indeed, improper as a matter of law.[2]

5. *Green v. Reading Co.,* 183 F.2d 716, 719 (3d Cir. 1950), cited by appellants, may indeed be an example of a court's wise amelioration of the sometimes harsh impact of Rule 51, but the unusual circumstances of that case are clearly distinguishable from the facts before us.

1. The process involved in the decision whether the presumption of due care arises resembles the trial judge's duties when faced with questions of fact preliminary to the admissibility of evidence. (*See* Fed.R.Evid. 104; and 1 Weinstein and Berger, Evidence, ¶¶ 104[01], 104[02] (1975).)

2. The majority opinion quotes language in *Lallatin v. Terry* (1959) 81 Idaho 238, 340 P.2d 112, 118, to conclude that the decision to invoke the presumption rests in the discretion of the trial judge. While the language in that case could have been more artfully drafted, it does not support the majority opinion's conclusion. It is obvious that it would have been improper in that case to instruct the jury on the presumption of due care where eyewitness to decedent's conduct prior to the accident was available. (*See also Drury v. Palmer* (1962) 84 Idaho 558, 375 P.2d 125; *Graham v. Milsap* (1955) 77

The presumption in the case at bar was properly invoked by appellants. Ronald Johnston, whose negligence was in issue, was dead. No witnesses were available to describe what Johnston did immediately or shortly before the accident. True, Marlar, was a witness to the events subsequent to the collision of the two vehicles. But he did not, and could not, testify as to the events prior to the accident, let alone to the decedent's conduct at that time. The existence of such a witness, thus, does not remove the need for an instruction on the presumption of due care. (*See Schultz & Lindsay Construction Co. v. Erickson* (8th Cir. 1965) 352 F.2d 425, 435 (". . . However, the mere fact that an eyewitness was present is not enough to annul the presumption. The eyewitness must have had sufficient time to observe whether the injured or deceased person was exercising due care in the crucial seconds before, and during, the accident."); *Jorstad v. City of Lewiston* (1969) 93 Idaho 122, 456 P.2d 766, 770 ("In this case there is no evidence of the decedent's conduct immediately prior to his death or striking the divider. The evidence . . of what the decedent or his car did after the collision is not sufficient to indicate what his conduct was immediately prior to striking the divider.").) Nor was the circumstantial evidence an adequate substitute for the testimony of live witnesses. The most that can be said for it is that an inference might be drawn that the decedent was inattentive. Certainly, unlike *Mundy*, a great deal was left to speculation about how the accident happened—as the majority's own conjectures reveal.

A conclusion that the presumption of due care properly arose in this case does not answer the separate question whether the presumption was dispelled. In deciding whether a presumption has been dispelled, we must start with the adoption by Idaho of the much-criticized view that a rebuttable presumption is a species of independent evidence.[3] Criticism of the presumption of evidence view was primarily based upon its illogic. The majority opinion fights with the premise.[4] Once the premise has been adopted, the results of the adoption follow with rigorous logic. Among the consequences is that a jury is supposed to weigh the evidence contradicting the presumption against the presumption. A trial judge cannot take this "evidence" from the jury unless reasonable minds could not differ in rejecting the presumption and accepting the contradicting affirmative evidence. " '[T]his court had definitely committed itself to the doctrine that where there is a conflict between the presumption and contrary evidence, from which reasonable minds might draw different conclusions, it is proper to instruct the jury as to the presumption.' " (*Department of Finance of State v. Union Pac. R.R. Co.* (1940) 61 Idaho 484, 104 P.2d 1110, 1112. *See also* the cases collected and analyzed in *Haman v. Prudential Insurance Co. of America, supra*, 415 P.2d at 310–312.) A trial judge cannot take the presumption of due care from the jury merely because some evidence conflicting with the presumption exists; a contrary assumption is antithetical to the presumption as evidence theory because it would authorize the trial

---

Idaho 179, 290 P.2d 744; *Weinstock and Chase, The "Presumption of Due Care" in California* (1953) 4 Hastings L.J. 124, 125.)

3. *E. g., Haman v. Prudential Insurance Co. of America* (1966) 91 Idaho 19, 415 P.2d 305; *Adams v. Bunker Hill & Sullivan Mining Co.* (1906) 12 Idaho 637, 89 P. 624.

4. California adhered to the presumption as evidence theory for many years, commencing with *Smellie v. Southern Pac. Co.* (1931) 212 Cal. 540, 299 P. 529, until it was overturned by the adoption in California of the Evidence Code.

Idaho has followed the development of the *Smellie* rule, but, unlike California, it has not overturned it either by overruling decisions or by statute. The rule was the subject of a well-known scholarly debate to which Professors Thayer, Wigmore, and Morgan were all parties. *See, e. g.,* 9 Wigmore on Evidence (3d ed.) Section 2491; Chadburn, J. H., The "Uniform Rules" and the California Law of Evidence (1954) 2 U.C.L.A.L.Rev. 1, 21.

judge to resolve conflicts in the evidence, a function committed solely to the jury.

*Bradbury v. Voge* and *Ineas v. Union Pac. R. R. Co.*[5] relied upon by the majority, are completely consistent with the presumption as evidence view. Both of these cases involve a conflict between a legally created presumption of due care on behalf of a decedent as against a presumption of negligence arising from the violation of a statute. In this situation a legally created presumption of negligence collides with a legally created presumption of nonnegligence. The presumption of negligence cancels out the presumption of nonnegligence.[6] Neither *Bradbury* nor *Ineas* solves the problem in our case because our case does not involve a collision between two contradictory presumptions, both of them created as a matter of law.

In absence of an overriding statutory presumption, the presumption of due care cannot be dispelled by "some" evidence. It can only be overridden when the controverting evidence is so strong that reasonable minds could not differ in rejecting the presumption and accepting the contradicting evidence. Although the majority opinion is correct in observing that circumstantial evidence can dispel the presumption, the observation is irrelevant. The strength, and not the source, of the evidence contradicting the presumption is what is at issue in deciding whether a presumption has been dispelled. Circumstantial evidence can be more powerful than direct testimony. But the central question remains whether all of the evidence, whatever the source, so unerringly points to the decedent's negligence, that contrary "evidence" (the presumption of due care) must be disbelieved as a matter of law. The evidence to which the majority has directed our attention simply does not have that overwhelming force, and the issue of the presumption of due care could therefore not properly be taken from the jury.[7]

Failure to instruct the jury on the presumption of due care requires reversal because its effect was to remove highly relevant "evidence" from the jury.[8] Independently, however, the absence of any intelligible instruction about the defendants' burden of proving that the decedent was contributorily negligent also requires reversal. The court did instruct the jury that the "burden is on the party, who asserts the affirmative of an issue" to prove it. To a lawyer who understands this esoteric shorthand, the instruction is meaningful. But it is entirely fanciful to believe that the instruction meant anything to the jury. And,

5. *Bradbury v. Voge* (1969) 93 Idaho 360, 461 P.2d 255; *Ineas v. Union Pac. R.R. Co.* (1952) 72 Idaho 390, 241 P.2d 1178.

6. As the dissenting opinion points out in the *Bradbury* case, the majority incorrectly went further in holding that the presumption of negligence not only overcame the presumption of due care, but it also compelled judgment in favor of the defendant on the theory of contributory negligence. The conclusion by the majority is incorrect on the ultimate question because even if the presumption of due care is dispelled as a matter of law by reason of the existence of the presumption of negligence, summary judgment or a directed verdict is improper because "there remains the issue whether such negligence was the proximate cause of the accident, because contributory negligence will not bar a plaintiff's recovery unless it proximately caused his injury." (461 P.2d at 260.)

7. Idaho law compels a trial judge to instruct the jury on the presumption of due care once the presumption has been properly invoked and evidence conclusively contradicting the presumption is not produced. The decision to invoke "the practical function" of the presumption is entirely separate from the decision to take the presumption from the jury by reason of the overwhelming weight of the opposing evidence. If there is any obscuring here, it is in the majority opinion's failure to make the appropriate separation between the conditions which cause the presumption to be invoked and the circumstances under which it may be dispelled.

8. This is especially true since Idaho's comparative negligence statute requires the jury to quantify fault and does not allow recovery where the jury determines that plaintiff's fault is greater than or equal to 50%. (*See* Idaho Code, § 6–801 (Supp.1975).)

the other instructions on the burden of proof were no more enlightening.[9]

I would reverse and remand for a new trial.

**9.** The absence of a coherent instruction on defendants' burden of proving contributory negligence was all the more prejudicial here where no instruction on the presumption of due care was given. As the majority opinion concedes, Idaho has treated the two evidentiary devices as interchangeable substitutes for live testimony. (*See Koch v. Elkins* (1950) 71 Idaho 50, 225 P.2d 457, 461 (". . . When the evidence . . . leaves the issue of negligence or contributory negligence in doubt or in equipoise, the law requires a decision against the party having the burden of proof, just as under like circumstances it requires a decision against him when he is confronted with a presumption of due care in favor of his opponent."); *Van v. Union Pac. R.R. Co.* (1961) 83 Idaho 539, 366 P.2d 837, 844 ("Serious doubt arises as to the propriety of giving an instruction on the presumption of due care in an action such as this where contributory negligence has been plead and relied upon as an affirmative defense.").)